BABER ET AL., APPELLEES, *v.* DENNIS, APPELLANT.

(No. 6247—Decided August 31, 1979.)

*Mr. Gary W. Gottschlich,* for appellee Darlene Baber.
*Mr. Roger B. Turrell,* for appellee Patricia Brooks.
*Mr. John E. Breidenbach,* for appellant.

McBRIDE, P.J.   This is an appeal from a judgment for compensatory and punitive damages arising from an automobile accident.

The plaintiffs-appellees, Darlene Baber and Patricia Brooks, filed their complaint alleging, among other matters, that the defendant-appellant negligently caused a collision between an automobile operated by her and one occupied by the plaintiffs causing personal injury to plaintiffs with the usual claim for damages. By way of an amended complaint, filed on June 12, 1978, plaintiffs demanded punitive as well as compen-

satory damages from defendant upon plaintiffs' allegation of wilful, wanton and reckless misconduct on the part of the defendant.

The action was tried to a jury from October 17 to October 20, 1978, upon the allegations of the amended complaint and upon the defendant's admission of negligence.

The trial court directed a verdict in favor of plaintiff Brooks in the sum of $2,166 for her automobile damage, and the jury returned a verdict in favor of Brooks in the sum of $13,000 compensatory damages and $10,000 punitive damages and a verdict in favor of plaintiff Baber for $8,000 compensatory damages and $10,000 punitive damages.

The verdicts were confirmed by a judgment entry to which defendant timely filed motions for a judgment notwithstanding the verdict and for a new trial. The trial court overruled defendant's motions. It is from that final order that this appeal is taken.

## I.

The collision occurred during the early morning hours of July 3, 1976, on Needmore Road. It was an assured-clear-distance incident, wherein the defendant operated an automobile into the rear end of an automobile driven by plaintiff Brooks. Plaintiff Baber was a passenger in the Brooks vehicle.

During the afternoon, evening and early morning hours preceding the collision, the defendant had consumed a substantial quantity of alcoholic beverages and was variously described as "high," "driving while under the influence of alcohol" and intoxicated. Some fifteen to seventeen single shots of vodka and grape juice were consumed. Proceeding home after visits to many bars, the defendant recalls nothing concerning the trip until she hit the rear end of Brooks' car. This recollection was brief. She stayed in her car until the sheriff took her arm in order to get her out of the car. (In defendant's deposition, she stated, "That was it until I woke up in jail.") To establish wantonness and foreseeability, a record of prior DWIs (driving while intoxicated) was introduced.

Both plaintiffs claimed a sprain-type injury to their necks and backs, together with the usual assortment of medical, hospital and drug expenses. Plaintiff Brooks also claimed property damage to her automobile.

Defendant did not attend the trial personally in her own behalf. Plaintiffs read defendant's deposition to the jury and thereby obtained her testimony.

## II.

There are eleven assignments of error, many of which relate in one way or the other to the question of whether punitive damages may be recovered in a motor vehicle accident situation where the wrongdoer was intoxicated. This issue must be resolved first.

There is no doubt that defendant was negligent and caused the collision. This was admitted. The evidence is overwhelming that defendant was intoxicated and in such a stupor as to become aware of the circumstances only on a few occasions: at the time of impact, at the time she was led from the car and later when awakened at the jail. The record is otherwise silent as to other negligence that evening or any intentional act; however, it includes evidence of prior DWIs. The factual posture of the case fits well the issue presented: Whether intoxication of the driver, in and of itself, meets the requirements of the law for punitive damages in a motor vehicle negligence case?

Punitive damages are available for an intentional or purposeful wrongful act. This is the thrust of many cases cited involving assault and battery, alienation of affections or fraud and deceit; these types of actions have often included reference to wantonness from which the argument originates that wantonness in a negligence case invites a recovery of punitive damages. An assault may be committed by the use of an automobile or any other instrument, but that is not the posture in this case.

In the context of this case, the terms "wilful" and "reckless" may be eliminated and not considered as a cause of the collision. Certainly, the drinking and its effect was voluntary; but the state of intoxication is not itself a tort. The crux of the action here is a violation of the motor vehicle laws; and to the extent that intoxication is involved as a preliminary to causation, the conduct or misconduct is a wanton disregard, generally, for the foreseeable rights of others. 39 Ohio Jurisprudence 2d 521, Negligence, Section 25. To this extent, the condition and conduct of the defendant fits the definition

of wanton misconduct furnished in the syllabus of *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114:

"Where the driver of an automobile fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct.***"

The *Hawkins* case related to the defense of contributory negligence and did not reach the issue of punitive damages. However, by way of a pointed footnote, fn. 4, at page 118, the court said:

"The question of what, if any, effect a plaintiff's contributory negligence should have upon an award of damages in a case involving willful misconduct is not before us, *nor is the issue of exemplary damages in such a case.* Furthermore, nothing in the record suggests that appellee's misconduct was willful, as opposed to wanton." (Emphasis added.)

Counsel concede that recovery of punitive damages based upon intoxication in an otherwise simple negligence case has not been resolved by the Supreme Court of Ohio. (Cf. *Rubeck* v. *Huffman* [1978], 54 Ohio St. 2d 20, 24, at fn. 4.) Two opinions of other Ohio courts sustain that right, both decided in 1977.

The first in point of time is *Payne* v. *Daley* (1977), 51 Ohio Misc. 65, by the Court of Common Pleas of Hamilton County, holding that punitive damages in a personal injury case arising from an automobile accident resulting from the defendant's driving while intoxicated is a jury question. This case reviews conflicting decisions in other states, and, in reaching its conclusions, bases its decision on two decisions from Ohio, involving torts of an intentional nature: *Gearhart* v. *Angeloff* (1969), 17 Ohio App. 2d 143 (gross negligence; revolver discharged in a bar, injuring the plaintiff); and, *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178 (wrongful execution).

The second case, supporting the right to punitive damages in a motor vehicle case, is *Richards* v. *Office Products Co.* (1977), 55 Ohio App. 2d 143. That case contains not only the issue of intoxication of the defendant, but also multiple operational factors missing in the instant case because of the many alleged acts of negligence and indifference in the *Richards* case. In *Richards* the defendant allegedly "***went around a stopped car, ran***[a] stop sign, caused a collision and [then] fled the scene." *Id.,* at page 145. The distinction is one of the

number of deliberate acts of negligence and not the factor of intoxication. The rationale of *Richards* and *Payne* are much the same: each court recognizing the potential danger of driving while intoxicated and imposing punitive damages for such outrageous condition when associated with a negligent act. The quotation from 2 Ohio Jury Instructions 595, 596 to 597, Section 259.39, appearing at page 148 of the *Richards* case, concerning constructive malice, is not from a standard charge but an excerpt from an "approved" instruction in an intentional tort case (assault and battery) and may not be considered applicable on the issue before this court.

In the context of the substantial change in negligence law, represented by the above two cases, the syllabus in *Hawkins* v. *Ivy, supra,* portends the possibility of a prospective substantial change in the traditional definition of negligence by imposing punitive damages in every negligence case where wanton misconduct can be shown, *whether or not intoxication be present.* If realized, there is a potential for doubling the verdicts in negligence cases and the addition of the punitive damage issue in many such cases.

However, the caution in footnote 4, at page 118 of the *Hawkins* case, *supra,* provides a reason to pause and speculate on the basis for the warning. Factually, the issue of wanton misconduct was in the *Hawkins* case only because of the issue of contributory negligence. Therefore, the facts in *Hawkins* limit the application of the syllabus and point to the fact that the question of punitive damages for negligence was not considered or decided.

The determinative law in Ohio is well expressed in the dissenting opinion of Justice Hart in *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, at page 437, and cited with approval by Justice Stewart in *Smithhisler* v. *Dutter* (1952), 157 Ohio St. 454, at page 461, and cited in *Gearhart* v. *Angeloff, supra,* at pages 144 to 145, as follows:

"This court has, over the years, recognized the propriety of submitting to a jury the question of the assessment of punitive damages in *certain tort cases where the defendant's wrongdoing has been intentional and deliberate,* or has the character of outrage frequently associated with crime. Not all tort actions are of such a character as to warrant the assessment of punitive damages. Generally, *the application of the*

*doctrine is confined* to cases where there is involved actual malice, interference with marital relations, or wanton personal injury, such as in cases of seduction, assault and battery, false imprisonment, or wrongful expulsion from public passenger vehicles or places of public entertainment." (Emphasis added.)

The punitive damage rule is applied only to certain enumerated situations. It has not been applied by the Supreme Court of Ohio in the absence of an intentional or deliberate act. The absence of intent or purpose is the critical distinction between compensatory and punitive damages and between negligence and a degree of culpability that includes "***full knowledge* of the surrounding circumstances***[and a] reckless and inexcusable disregard of the rights of other motorists***" as described in *Hawkins, supra,* at page 116.

We conclude that the Supreme Court of Ohio has not recognized or created a new, independent cause for wanton misconduct where there has been a single, simple violation of the motor vehicle laws and that the extension of the right to punitive damages in such a case is unwarranted at this time, regardless of the nature of the unintentional legal violation. Speed for example, however excessive, does not change the nature of the cause of action; and the rule, to this date, is the same even though a condition of intoxication is present.

Admittedly, the rationale for a change, whether based on circumstances of intoxication or misconduct without intoxication, has some merit. There is ample room for differences of opinion as suggested by opinions in other states. However, this court is bound by *stare decisis* and is not free to undermine the existing law that confines punitive damages to certain limited cases where intent or deliberation is an essential element in the cause of action. This element is not present in the usual motor vehicle violation. We do not believe that this court may impose additional punishment because of a condition of intoxication, nor is it appropriate here to create additional relief by way of punitive damages.

This conclusion is contrary to that of the trial court and requires a reversal in this case. If the case of *Richards* v. *Office Products Co.* (1977), 55 Ohio App. 2d 143, of the Court of Appeals for Erie County is not distinguished on its facts, the conclusion reached herein is in direct conflict.

### III.

*Assignments of Error Nos. 1 to 6.*

The first six assignments of error relate in one way or the other to the right to recover punitive damages as a result of a motor vehicle violation. The paradox under the rules is evident here in that the merit of each depends upon the resolution of the major issue which we have decided. We shall endeavor to comment upon each.

The thrust of the first assignment of error is the submission to the jury, and the resulting judgment, on the punitive damages issue which has been resolved in favor of the defendant. Actual personal malice is not essential in some cases. If punitive damages be proper, the definition of legal malice, as doing a wrongful act *purposely,* requires modification to fit a wanton misconduct situation in which intent or purpose is not required; in addition, malice in any form would seem unnecessary. The definition of wanton misconduct in *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, appears to be less than recklessness, as defined in R. C. 2901.22(C), and a degree greater than simple negligence in that there must be a total lack of any care. These and other complications resulting from the application of *Hawkins* to the instant case suggest that the caution in footnote 4 (*Hawkins, supra,* at page 118) was well advised.

With reference to the third assignment of error, we agree that testimony is required of what is a reasonable attorney fee if the jury is permitted to consider the subject. To this limited extent, the third assignment of error is correct.

As to the fourth assignment of error, prior conduct and intoxication would be admissible, despite the concession of negligence, only if punitive damages were proper.

The fifth assignment of error further demonstrates the instructional problem in cases decided after the *Hawkins* decision, if punitive damages are proper in a negligence case. The *Hawkins* instruction was requested and denied and an objection was made.

The same may be said of the sixth assignment of error. Evidence of prior intoxication and DWI offenses have no bearing in a negligence case; however, such evidence does relate to wantonness in the event that issue is proper.

Accordingly, the first six assignments of error are sustained.

### Assignment of Error No. 7.

Evidence of the demise of the husband of one of the plaintiffs was drawn into the case by the effort of this plaintiff to avoid shock to a minor child by repetition of a reference to an ambulance trip. This was neither improper nor prejudicial. The seventh assignment of error is denied.

### Assignment of Error No. 8.

There is testimony that the cervical sprains will probably cause pain in the future. However, there is no testimony of the costs of future medical expenses, if any, that may be required. Submission of the issue of future medical expenses to the jury was error, but we find no objection to this element of the instruction and consider it waived. The eighth assignment of error is denied.

### Assignment of Error No. 9.

This assignment of error relates to the evidence concerning the amount of damage to the vehicle driven by plaintiff Brooks. This evidence came from the owner and from the garageman as to the cost of repairs. The objection to the before and after value was based upon the owner's admission that she obtained her knowledge from another. This, the defendant claims, must be ignored as hearsay. We know of no rule that the owner is disqualified from testifying to the value of her own property merely because of a reliance upon information from another. The ninth assignment of error is denied.

### Assignments of Error Nos. 10 and 11.

Part of the damages for the vehicle (Assignment of Error No. 10) and part of the damages for medical expenses (Assignment of Error No. 11) were sought by plaintiffs who in each instance had been paid, in part, by automobile and health insurance carriers that became subrogated to the extent of their payments. Defendant sought to introduce facts as to such payments as a defense, but, did not request joinder of the insurance carriers. Defendant claims that judgment for the full amount constitutes error.

This was and still is a problem in the trial court because

counsel, well aware of the insurer's identity, tactically do not desire the carriers to be parties in the case. This is considered a waiver of the defendant's right to require the carriers to be parties, but it is not a defense to the act of a wrongdoer. Plaintiffs have a real interest in the deductible amount, *i.e.,* the amount not covered by insurance, and anything recovered in excess of that amount is held by them either on a trust basis, or by virtue of the insurance contracts, for the carriers. We do not believe that a tortfeasor may escape liability because of the nonjoinder of the subrogee where the defense is aware of the identity of the carriers and does not join or request joinder of such parties. See *Holibaugh* v. *Cox* (1958), 167 Ohio St. 340. These two assignments of error are denied.

### IV.

As a result of our conclusions on Assignments of Error Nos. 1 through 6, the judgment will be reversed and the cause remanded for a new trial. However, because of the significance of the punitive damage issue and the likelihood of appeal, which we consider quite appropriate, this opinion will not be journalized at this time. As suggested in the concurring opinion, the judgment will be affirmed if a remittitur is accepted on punitive damages.*

*Judgment accordingly.*

PHILLIPS, J., concurs.

KERNS, J., concurring.   I concur in the opinion of the majority, but since the compensatory damages and punitive damages are severable, the plaintiffs should be afforded an opportunity to accept a remittitur in the amount of the punitive damages before the cause is remanded for a new trial.

---

* By an entry filed on September 20, 1979, the remittitur was accepted; the judgment of the trial court, as to compensatory damages, was affirmed; and, the rights to further appeal were waived.