BROCKMAN, Appellant,

v.

BELL et al., Appellees.

[Cite as *Brockman v. Bell* (1992), 78 Ohio App.3d 508.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900938.

Decided March 4, 1992.

510

*Thomas J. Conners,* for appellant.

*Eugene M. Gelfand,* for appellees.

*Per Curiam.*

Plaintiff-appellant Alan Brockman has taken the instant appeal from the entry of summary judgment for defendants-appellees Richard J. Bell and the Board of Green Township Trustees ("trustees") on Brockman's complaint seeking recovery for damage to his automobile incurred in a collision with an ambulance operated by Bell in the course of his employment as a fire fighter/paramedic for Green Township. Brockman presents on appeal four assignments of error.

On November 24, 1988, at approximately 11:30 a.m., a collision occurred at the intersection of Glenway Avenue and Westbourne Road in Green Township, Hamilton County, Ohio, between Brockman's car and a Green Township Fire Department ambulance driven by Bell. Prior to the collision, both vehicles were proceeding south on Glenway. The ambulance had been dispatched in response to a "911" call and was travelling with its overhead lights and siren in operation. Brockman preceded the ambulance to the intersection of Glenway and Westbourne, and, in response to the siren, he pulled his car into the curb lane and, despite the green traffic signal in his favor, stopped at the intersection. When Bell reached the intersection, he steered the ambulance to the left of Brockman's car and attempted to execute a right turn from southbound Glenway to westbound Westbourne. The vehicles collided, and, as a result, the ambulance sustained light damage to its right side and Brockman's car sustained moderate damage to its front bumper.

I

We address together Brockman's first, second and third assignments of error, which, in essence, present a challenge to the entry of summary judgment for the defendants when issues of fact remain as to whether Bell was responding to an emergency call and whether Bell's actions constituted a violation of R.C. 4511.03 or willful, wanton or reckless misconduct. We find this contention to be well taken in part.

The standard governing the disposition of the defendants' motion for summary judgment is set forth in Civ.R. 56. Pursuant thereto, a party against whom a claim is asserted may move, with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. Civ.R. 56(A). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines:

(1) that no genuine issue of material fact remains to be litigated;

(2) that the moving party is entitled to judgment as a matter of law; and

(3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; Civ.R. 56(C).

The trial court entered summary judgment for the defendants on the basis of sovereign immunity. R.C. 2744.02(A)(1) confers upon a political subdivision in Ohio immunity from civil liability "for injury, death, or loss to persons or

property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B)(1) sets forth an exception to the general rule of immunity, providing that "political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B)(1)(b) provides a political subdivision with a full defense to the liability imposed under R.C. 2744.02(B)(1) if the motor vehicle was operated by "[a] member of a municipal corporation fire department or any other firefighting agency * * * while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or in answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct * * *."

R.C. 2744.03(A)(6) similarly confers upon the employee of a political subdivision immunity from civil tort liability "for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function," unless: "(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities; (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Liability is expressly imposed upon the employee by a section of the Revised Code."

A

Brockman, in his second assignment of error, challenges the entry of summary judgment for the trustees when an issue of fact remains as to whether Bell's actions constituted a violation of R.C. 4511.03. The challenge presented in his third assignment of error is directed, in part, against the trial court's failure to apply R.C. 2744.02(B)(1)(c). These challenges are premised upon the applicability of R.C. 2744.02(B)(1)(c).

R.C. 2744.02(B)(1)(c), in a manner similar to R.C. 2744.02(B)(1)(b), provides a full defense to the liability imposed under R.C. 2744.02(B)(1) if the liability arose in connection with the negligent operation of a motor vehicle by "[a] member of an emergency medical service owned or operated by a political subdivision * * * while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complie[d] with the precautions of section 4511.03 of the Revised Code." R.C. 4511.03

imposes a duty upon "[t]he driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign [, to] slow down as necessary for safety to traffic [and to] proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

Bell was a paramedic as well as a fire fighter, and the collision occurred while he was operating an ambulance, albeit while in the employ of a fire department and in response to a fire alarm. An argument, therefore, might be made in support of the applicability of R.C. 2744.02(B)(1)(c). However, the evidentiary material submitted on the motion for summary judgment discloses that when the collision occurred, the traffic signal was not red, but green, and Brockman has not placed at issue Bell's compliance with the licensing requirements to operate the ambulance. Therefore, R.C. 4511.03 is inapposite, and on the state of the record before us, the application of R.C. 2744.02(B)(1)(b) rather than R.C. 2744.02(B)(1)(c) is of no real consequence.

## B

■ Brockman contends in his first assignment of error that summary judgment was improvidently entered for the township when an issue of fact remains as to whether Bell was, for purposes of R.C. 2744.02(B)(1)(b), responding to an "emergency alarm." This contention is feckless.

The Revised Code does not expressly define the phrase "emergency alarm" as it is used in R.C. 2744.02(B)(1)(b).[1] However, the "emergency" aspect of the R.C. 2744.02(B)(1)(b) grant of immunity may be satisfied by proof that the operation of the motor vehicle was in answer to "any *other* emergency alarm." (Emphasis added.) Thus, the phrase "emergency alarm" may be defined in part with reference to the nonexclusive list of immunized conduct set forth in R.C. 2744.02(B)(1)(b), which includes the negligent operation of a motor vehicle by a member of a fire department "while engaged in duty at a fire" or while "proceeding toward a place where a fire is in progress or is believed to be in progress * * *."

---

**1.** R.C. 2744.01(A) defines an "emergency call" for purposes of R.C. Chapter 2744 as "a call to duty including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." This definition is, by its terms, inapplicable to R.C. 2744.02(B)(1)(b), but directly applicable to R.C. 2744.02(B)(1)(a), which provides a full defense to the liability imposed under R.C. 2744.02(B)(1) if the liability arose in connection with the negligent operation of a motor vehicle by "[a] member of a municipal corporation police department or any other police agency while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct * * *."

The evidentiary material submitted on the motion for summary judgment discloses that the "method of alarm" to which Bell responded was a "tie-in (911)" call and that three vehicles carrying nine personnel were dispatched in response to the call. As it developed, there was smoke, but no fire, and the only "action taken" was investigative. However, the immunity afforded under R.C. 2744.02(B)(1)(b) may be invoked to vitiate liability arising from the negligent operation of a motor vehicle "proceeding toward a place where a fire * * * is *believed* to be in progress * * *." (Emphasis added.) The record is devoid of evidentiary material to controvert Bell's substantiated assertion that the collision occurred while he was proceeding toward a place where a fire was believed to be in progress.[2] Therefore, no issue of fact remains as to whether Bell was responding to an "emergency alarm."

### C

The balance of Brockman's third assignment of error is directed against the entry of summary judgment for the defendants when an issue of fact remains as to whether Bell's actions constituted willful or wanton misconduct, thus precluding the trustees from invoking the immunity afforded under R.C. 2744.02(B)(1)(b), or wanton or reckless misconduct, thus precluding Bell from invoking the immunity afforded under R.C. 2744.02(A)(6). We find this challenge to be well taken.

Civil liability for negligence is predicated upon injury caused by the failure to discharge a duty recognized in law and owed to the injured party. The existence of a duty depends on the foreseeability of the injury. The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances, should have anticipated that injury to another was the probable result of his performance or nonperformance of an act. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 543 N.E.2d 1188. As the probability increases that certain consequences will flow from certain conduct, the actor's conduct acquires the character of intent and moves from negligence toward intentional wrongdoing. See *Pariseau v. Wedge Products,*

---

2. Our interpretation of the "emergency" aspect of the R.C. 2744.02(B)(1)(b) grant of immunity to contain a subjective-belief element is consistent with the interpretation given the phrase "emergency call" for purposes of the immunity afforded police officers under that portion of former R.C. 701.02 that operated as the predecessor to R.C. 2744.02(B)(1)(a). See *Agnew v. Porter* (1970), 23 Ohio St.2d 18, 52 O.O.2d 79, 260 N.E.2d 830 (a police officer responding to an emergency call has no duty to determine if an actual emergency exists); *Pawlak v. Willoughby* (Dec. 17, 1987), Cuyahoga App. No. 53181, unreported, 1987 WL 29433 (a police officer's perception of the existence of an emergency is paramount to an objective review of the facts in hindsight; *Fish v. Coffey* (1986), 33 Ohio App.3d 129, 514 N.E.2d 896 (the immunity afforded under R.C. 701.02 is triggered by an urgent call to duty, not the actual degree of danger).

*Inc.* (1988), 36 Ohio St.3d 124, 126, 522 N.E.2d 511, 516 (citing 1 Restatement of the Law 2d, Torts [1965] 15, Section 8A, Comment *b* ). Therefore, the terms "wanton," "willful" and "reckless," as used to describe tortious conduct, might best be defined at points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct.

Wanton misconduct is a degree greater than negligence. *Baber v. Dennis* (1979), 66 Ohio App.2d 1, 20 O.O.3d 28, 419 N.E.2d 16. The Ohio Supreme Court has defined "wanton misconduct" as the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor. *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652; *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367; *Tighe v. Diamond* (1948), 149 Ohio St. 520, 37 O.O. 243, 80 N.E.2d 122.

■ Willful misconduct is also something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct. *Tighe, supra.* The phrase "willful misconduct" implies intent. However, the intention relates to the misconduct, not to the result, and, therefore, an intent to injure need not be shown. *Id.* The Ohio Supreme Court has defined "willful misconduct" as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Id.* at 527, 37 O.O. at 246, 80 N.E.2d at 127; see, also, *Napper v. Litchfield* (Sept. 30, 1991), Madison App. No. CA91–02–006, unreported, 1991 WL 194740; *Bedwell v. Physio–Control Corp.* (Jan. 5, 1991), Miami App. No. 89–CA–67, unreported, 1991 WL 1665; *Peoples v. Willoughby* (1990), 70 Ohio App.3d 848, 592 N.E.2d 901.

■ The place of reckless misconduct on the continuum is less definite. R.C. 2901.22(C) provides, for purposes of the offenses proscribed in the Criminal Code, that:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

This definition of the culpable mental state of recklessness would appear to place reckless misconduct between willful misconduct and intentional wrong-

doing. In *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, however, the Ohio Supreme Court adopted the definition of "reckless misconduct" set forth in 2 Restatement of the Law 2d, Torts (1965) 587, Section 500, in holding that, between participants in a sporting event, no liability arises for injuries caused by negligence, but liability may be predicated on intentional and, in some instances, reckless misconduct. Section 500 of the Restatement states:

"The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Comment *f* to Section 500 compares recklessness with intentional misconduct, providing that "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *Id.* at 590. Thus, "reckless misconduct" as defined in Section 500 of the Restatement may be used interchangeably with "willful misconduct," *Thompson, supra; Jackson v. Butler Cty. Bd. of Commrs.* (Dec. 2, 1991), Butler App. No. CA91–01–005, unreported, and, for purposes of the immunity afforded under R.C. Chapter 2744, "wanton or reckless" misconduct under R.C. 2744.-03(A)(6) may be viewed as the functional equivalent of "willful or wanton misconduct" under R.C. 2744.02(B)(1)(b).[3]

█ In the instant case, the defendants presented evidence, including the statements to police of Bell and the fire fighters who accompanied him in the ambulance, to support their position that Brockman caused the collision by permitting his car to move forward into the side of the ambulance as Bell attempted to execute a right turn around the car. Brockman's position, which was substantiated by his own statements and that of an eyewitness, was that Bell caused the collision by operating the ambulance at a rate of speed that prevented him from controlling it through the turn, by failing to appreciate Brockman's presence in the right-rear blind-spot of the ambulance, and by executing the turn too sharply. Thus, an issue of fact remains as to whether the collision was caused by conduct on the part of Brockman or on the part of Bell. This issue is immaterial, however, unless the evidence submitted on the motion for summary judgment, viewed in a light most favorable to Brockman,

---

**3.** The court in *Thompson, supra,* suggests that the term "reckless" might also be used interchangeably with the term "wanton." *Id.* at 104, 559 N.E.2d at 708, fn. 1. We find, however, that to do so is to ignore the distinction between willful misconduct and wanton misconduct drawn in *Tighe, supra.*

could reasonably support a conclusion that Bell's conduct constituted more than mere negligence such that it could be characterized as wanton, willful or reckless.

It has been observed that, because the line between willful and wanton misconduct and ordinary negligence can be a fine one, the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of the evidence. See *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19; *Hawkins, supra; Tighe, supra; Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 528 N.E.2d 578. We hold that, under the totality of the circumstances here, genuine issues of material fact remain as to whether Bell or Brockman caused the collision and whether Bell's conduct constituted wanton, willful or reckless misconduct.

## D

Upon our determination that no issue of fact remains as to whether Bell was responding to an emergency alarm, we overrule the first assignment of error. Upon our determination that no issue of fact remains as to whether Bell's conduct constituted a violation of R.C. 4511.03, we overrule the second assignment of error and that portion of the third assignment of error directed against the trial court's failure to apply R.C. 2744.02(B)(1)(c). However, we sustain the balance of the third assignment of error upon our determination that issues of fact remain as to whether Bell or Brockman caused the collision and whether, for purposes of the immunity afforded under R.C. 2744.-02(B)(1)(b) and R.C. 2744.03(A)(6), Bell's conduct was wanton, willful or reckless.

## II

 Brockman contends in his fourth and final assignment of error that the trial court erred in granting summary judgment for the defendants when discovery had yet to be completed. This contention is feckless.

Civ.R. 56(F) provides:

"(F) When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

We find no abuse of discretion in the trial court's failure to refuse the defendants' motion for summary judgment or to order a continuance when Brockman was afforded ample time to conduct discovery and when he failed to submit an affidavit setting forth sufficient reasons for his failure to present by affidavit facts essential to justify his opposition to the entry of summary judgment for the defendants. See *Murphy v. East Akron Community House* (1989), 56 Ohio App.3d 54, 564 N.E.2d 742. We, therefore, overrule the fourth assignment of error.

For the reasons set forth herein, we reverse the judgment of the court below and remand this cause for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ., concur.