JOURNAL ENTRY and OPINION
Appellant James Colbert appeals the trial court's granting of summary judgment in favor of appellee City of Cleveland. Colbert assigns the following as error for our review:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE CITY OF CLEVELAND'S MOTION FOR SUMMARY JUDGMENT.
Having reviewed the record and legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
While patrolling near East 114th Street, Cleveland, Officer Daniel Connors and his partner, Officer Michael Shay, observed two males in a red Dodge hand money to a male standing on the side of the street. After the exchange, the two men drove away. This area of Cleveland, Officer Connors testified, is notorious for drug trafficking. Without activating his vehicle's lights or siren or calling for assistance, Officer Connors cautiously pursued the Dodge, believing its occupants had just purchased drugs. Officer Connors planned to stop the vehicle after it cleared the transaction area so as not to alert the suspected seller. The officers drove parallel to the course taken by the Dodge, anticipating they would intercept the Dodge in the area of East 93rd Street. When the officers reached the intersection of East 114th Street and Harvard Avenue, Officer Connors stopped, looked both directions, and proceeded into the intersection where he collided with Colbert's vehicle.
Colbert sued the City of Cleveland and Officer Connors for personal injuries suffered in the collision. Upon Officer Connors' motion, the trial court determined he was immune from liability as an employee of a political subdivision, and dismissed the complaint against him, leaving the cause pending against the City. Following deposition of Officer Connors, the City moved for summary judgment. The City argued it is immune from suit because the accident occurred while Officer Connors was responding to an emergency call as defined in R.C. 2744.01(A). The trial court agreed, and granted the City's motion for summary judgment. This appeal follows.
We review the grant of summary judgment de novo.[1] We afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[3]
Civ.R. 56 places upon the moving party the initial burden of setting forth specific facts that demonstrate no issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
Prior to evaluating whether the City and Colbert met their respective Dresher burdens, we set forth the framework for our query. In his sole assigned error, Colbert argues the trial court erred in granting summary judgment by misapplying R.C. 2744.02 which states:
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
* * *
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to such liability:
 (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
* * *
[Emphasis added].
Thus, R.C. 2744.02 sets forth a three-tiered analysis: first, whether blanket immunity exists, second, whether the exception to blanket immunity applies, and third, whether a full defense to the exception applies.[6] Here, the parties agree that the City may claim blanket immunity, and that the exception to such immunity applies. The parties differ on whether the City can avail itself of a full defense to liability. The City argues a full defense applies because Officer Connors was responding to an emergency call when the accident occurred, and he was not engaging in willful or wanton misconduct. Because Colbert concedes Officer Connors did not engage in willful or wanton misconduct, our sole query is whether a genuine issue of material fact exists as to whether Officer Connors was responding to an emergency call at the time of the accident.
R.C. 2744.01(A) defines emergency call as:
 * * * a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer.
[Emphasis added].
This and many other courts throughout Ohio have held it is the to duty, not the degree of actual danger which trigger immunity.
In Hall-Pearson v. City of South Euclid,[7] this court held that a police officer responding to a robbery dispatch was on an emergency call even though the robber had already completed his crime and the responding officer did not activate his lights or siren.[8] Hall-Pearson urged that these facts necessarily lead to the conclusion that no danger existed, and thus an emergency ceased to exist.[9] We dismissed Hall-Pearson's argument which was based on the degree of danger, and determined that an emergency call existed as a matter of law because the officer was responding to a call to duty.[10]
In Moore v. City of Columbus, the Tenth District Court of Appeals determined that an emergency call is not limited to inherently dangerous situations. In Moore, a police officer caused a traffic accident while responding to a burglary dispatch. In affirming the trial court's grant of summary judgment regarding R.C. 2744 municipal liability, that court stated:
 [A]ppellants' interpretation of the statute serves to restrict the rather open-ended definition of emergency call as provided by the legislature. By focusing on the language inherently dangerous situations appellants have completely failed to comprehend that R.C. 2744.01(A) defines emergency call as a call to duty including, but not limited to * * * police dispatches * * * of inherently dangerous situations that demand an immediate response on the part of a peace officer. * * * There is no requirement in the statute which would limit an emergency call only to those occasions where there is an inherently dangerous situation or when human life is at danger.[11]
In Brockman v. Bell,[12] the First District Court of Appeals of Ohio determined that a fire department ambulance responding to a 911 call was on an emergency call even though no fire existed.[13]
In Fish v. Coffey,[14] the Second District Court of Appeals of Ohio stated in syllabus:
* * *.
 It is the urgent call to duty rather than the actual degree of danger that triggers the immunity afforded by former R.C. 701.02 [predecessor to current R.C. 2744.02] to police officers `engaged in the operation of a motor vehicle while responding to an emergency call.'[15]
Thus, Ohio Appellate Courts have consistently held that a call to duty, regardless of whether any danger actually existed, is an emergency call which triggers immunity. Further, neither the Revised Code nor any relevant case law distinguishes a call to duty resulting from the responding officer's personal observations from any other call to duty. In fact, various Ohio courts including this court have explicitly held that R.C. 2744.01(A) does not segregate an officer's personal observations for greater scrutiny.
In Jacobs v City of Cleveland, this court again supported the proposition that danger is not a factor when determining whether a police officer was responding to an emergency call even when the call stemmed from the officers own observations. In that case, the police officer personally observed Jacobs speeding through two traffic lights. While in the process of pulling-over Jacobs, the officer's cruiser slid on a patch of ice and hit Jacob's car. In affirming the trial court's grant of summary judgment as to R.C. 2744 municipal immunity we stated:
 Appellants appear to argue that the situation must be one that is inherently dangerous in order to constitute an emergency call. [R.C. 2744.01(A)], however, is not so restrictive.
 Read in its entirety, the definition begins broadly by defining an emergency call as a call to duty. This duty includes, but is not limited to, responding to inherently dangerous situations. Thus appellants' position that an emergency call must be in response to an inherently dangerous situation is insupportable.[16]
In Ferrell v. Windham Township Police Department, the Eleventh District Court of Appeals considered whether a police officer responding to his personal observation of a driver squealing his vehicle's tires was on an emergency call. In affirming the trial court's grant of summary judgment, the Eleventh District stated:
 [R.C. 2744.01(A)'s] statutory language is explicitly intended to be an exemplary, not exhaustive, list of emergency calls. An emergency call need not be in response to an inherently dangerous situation. An officer's observation of reckless driving may demonstrate that there is no genuine issue of material fact regarding whether the officer was responding to an emergency call.[17]
The foregoing cases clearly establish that R.C. 2744.01(A) broadly defines emergency call as a call to duty, and then provides a non-exhaustive list of examples of what may constitute a call to duty. Because an emergency call is, by explicit definition, a call to duty, and because our body of case-law clearly supports such a broad definition, any concern for inherent danger, and the proposition that an officer's personal observations should be subject to unique skepticism, are indulgent pursuits of non-issues engaged in by the minority opinion. By definition, a police officer responding to a personal observation is on an emergency call if such observation calls him to duty.
Having established our framework by focusing the issue on whether Officer Connor was on an emergency call, and defining that an emergency call is simply a call to duty, we now turn to the established facts of this case and whether the City and Colbert satisfied their respective Dresher burdens. Although on an appeal from summary judgment we conduct a de novo review, we do not sit as would a trial court. Contrary to the minority opinion's approach, we are not finders of fact and are thus not permitted to add even a scintilla of evidence to the record; rather we are strictly bound by the record before us and solely from that record we must make our decision.[18]
In that vein, our first query is whether the City set forth specific facts that demonstrate no issue of genuine material fact exists as to whether Officer Connor was on an emergency call. The City sets forth that Officer Connors witnessed what he believed to be a drug transaction, that Officer Connor initiated a pursuit of the suspected drug buyers, and that the accident with Colbert occurred during that pursuit. A police officer responding to his observations of a suspected drug transaction is certainly called to duty. Keeping in mind that an officer is on an emergency call when he is called to duty regardless of an inherent danger, the City satisfied its initial burden of setting forth specific facts that demonstrate no issue of material fact exists as to whether Officer Colbert was on an emergency call.
In response, Dresher requires Colbert to set forth a genuine issue of material fact in order to avoid summary judgment. The city has patently failed to do so. Colbert does not dispute that Officer Connor witnessed the exchange of money which he suspected to be a drug transaction, that Officer Connor pursued the suspected buyers, or that the accident occurred during that pursuit. Colbert solely opposes summary judgment on the grounds that Officer Connor was not on an emergency call because he did not respond to an inherently dangerous situation.[19] Because inherent danger is not determinative of whether a police officer is on an emergency call, Colbert has failed to satisfy his reciprocal Dresher burden to set forth a genuine issue of material fact. Therefore, as a matter of law, Officer Connors was responding to an emergency call when the accident occurred with. Accordingly, Colbert's assigned error is without merit.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., CONCURS. ANNE L. KILBANE, J., DISSENTS. (SEE ATTACHED DISSENTING OPINION.)
[1] Brown v. Scotio Cty. Bd. Of Commrs (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153, 1157; Dupler v. Mansfield Journal Co., Inc. (1980), 64 Ohio App.2d 116, 413 N.E.2d 1187.
[2] Northeast Ohio Apt. Assn. v. Cuyahoga Cty Bd. of Commrs. (1997),121 Ohio App.3d 188, 699 N.E.2d 534; Weiper v. W.A. Hill Assoc.(1995),104 Ohio App.3d 250, 661 N.E.2d 769; Brown v. Scotio Bd. Of Commrs,87 Ohio App.3d 704, 622 N.E.2d 1153.
[3] Holliman v. Allstate Ins. Co. (1999), 86 Ohio St.3d 414,715 N.E.2d 532; Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317,327, 364 N.E.2d 267, 273-274.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264,273-274.
[5] Id, 75 Ohio St.3d at 293, 662 N.E.2d at 274.
[6] See Jones v. Shelly Co. (1995), 106 Ohio App.3d 440, 445,666 N.E.2d 316, 319.
[7] Cuyahoga County App. No. 73429, unreported
[8] Id. Stating, It is also clear that the officer responding to the emergency call need not activate the siren and lights of the vehicle in order for the response to constitute an emergency call within the meaning of R.C. 2744.01(A). Lipscomb v. Lewis (1993),85 Ohio App.3d 97, 619 N.E.2d 102; Horton v. Dayton, supra, at 71; Moore v. Columbus (1994), 98 Ohio App.3d 701, 709, 649 N.E.2d 850.
[9] Id.
[10] Id.
[11] (1994), 98 Ohio App.3d 701, 706, 649 N.E.2d 850, 853. Emphasis in original.
[12] (1992), 78 Ohio App.3d 508, 605 N.E.2d 445.
[13] Id.
[14] (1986), 33 Ohio App.3d 129, 514 N.E.2d 896.
[15] Id. R.C. 701.02 is the precursor of R.C. 2744. See Rogers v. DeRue (1991), 75 Ohio App.3d 200, 203, 598 N.E.2d 1312, 1313.
[16] Jacobs at 5-6, citing Moore v. Columbus (1994), 98 Ohio App.3d 701,706-707, 649 N.E.2d 850. Emphasis in original.
[17] Ferrell at 8. Internal citations omitted.
[18] State v. Ishmail (1978), 54 Ohio St.2d 402; 377 N.E.2d 500.
[19] Specifically, Colbert's brief in opposition to the City's motion for summary judgment states:
 The sworn testimony of Officer Connors at his Deposition demonstrates, at the very least, that there is a genuine issue of material fact as to whether Officer Connors believed the situation to which he was responding was dangerous, and demanded his immediate response.
* * *.
 [R]easonable minds could conclude that Officer Connor's actions after he made such an observation were not the actions of a police officer who believed he had just observed an inherently dangerous situation that demanded his immediate response.
* * *.
 If Officer Connors had believed that he observed an inherently dangerous situation which required immediate response, a reasonable person could assume that he would not have stopped at a stop sign, he would have radioed in a description of the vehicle he was pursuing, and radioed for back-up and activated his lights and sirens.
* * *.
[Underlining in original].