[Cite as *Goodman v. Am. Elec. Power*, 2015-Ohio-5130.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MARK L. GOODMAN | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 15 CA 13 |
| AMERICAN ELECTRIC POWER, et al. | |
| | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:        Civil Appeal from the Court of Common
                                Pleas, Case No.  14 PI 000246


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         December 9, 2015


APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee Ohio Power

MATTHEW J. CARTY                        JAMES R. BLAKE
RYAN M. HARRELL                         JUDE B. STREB
ELK & ELK CO., LTD.                     DAY KETTERER LTD.
6105 Parkland Boulevard                 200 Market Avenue North, P.O. Box 24213
Mayfield Heights, Ohio  44124           Canton, Ohio  44701

*Wise, J.*

**{¶1}** Plaintiff-Appellant Mark L. Goodman appeals the decision of the Guernsey County Court of Common Pleas which granted summary judgment in favor of Defendant-Appellee Ohio Power Company dba American Electric Power.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** This case arises from an injury suffered by Plaintiff-Appellant Mark L. Goodman on May 26, 2012, while he was performing electrical work while permissibly on the property of Bob Warner, a man for whom Plaintiff-Appellant Goodman had performed residential electrical work in the past.

**{¶3}** Mr. Warner, a customer of Defendant Ohio Power Company dba American Electric Power (AEP), decided to upgrade his electrical service from 60 amps to 200 amps. (Gross Depo. pp. 15-16). AEP assigned Line Servicer William Gross to perform AEP's portion of the upgrade. The upgrade of an electrical service was a standard job for Gross, and he was very familiar with the type of work that had to be done. (Gross Depo. pp. 7, 8, 16). Generally, Gross' job was to disconnect the power, replace the service drop because it was too small for 200 amps, connect wires from the new service drop to the customer's new entrance cable, and reconnect the power. (Gross Depo. pp. 18-20). AEP performed this type of work as a customer service and did not charge the customer for the work. (*see* Woodard Aff. ¶8).

**{¶4}** Mr. Warner had hired Plaintiff-Appellant Goodman to replace his entrance cable, meter base, and electrical box and wiring inside the house. (Plaintiff's Depo. pp. 12-13). Plaintiff-Appellant Goodman was to be paid $550.00 for the job by Warner. Plaintiff-Appellant was to supply the materials. (Plaintiff's Depo. p. 19).

{¶5}    Plaintiff-Appellant Goodman had done other maintenance jobs for Warner in the past. (Plaintiff's Depo. p. 13). Goodman had never had any formal training to do electrical work, although he had had some experience doing electrical work on a part-time basis, including installing approximately 30 entrance cables and meter boxes in the past. (Plaintiff's Depo. 13-14, 16). Goodman owned a 24-foot aluminum ladder, which he took to Warner's house. (Plaintiff's Depo. p. 15). Goodman always used a ladder when he did the type of work he was going to do at Warner's. (Plaintiff's Depo. pp. 16-17). Goodman stated that he was cognizant of the hazards of being up on a ladder but admitted that he never used any fall protection such as tie-offs or any other type of personal safety equipment. (Plaintiff's Depo. pp. 15-17).

{¶6}    The service upgrade at the Warner house was scheduled for May 26, 2012. Line Servicer Gross went to the house the day before to inspect the job site. He noted that the service drop went from the house, over the detached garage at the end of the driveway and through quite a few trees to the transformer pole. (Gross Depo. pp. 17-18). Gross arrived at the Warner house at approximately 9:30 a.m. on May 26, 2012. He spoke briefly with Warner, whom he did not know, and unloaded a ladder and other AEP equipment that he was going to use at the house. (Gross Depo. p. 22-23). Gross then drove his truck to the transformer pole, where the service drop to Warner's house was attached. The pole was around the block in an abandoned alley. He set up his truck at the transformer pole, went up in the bucket and de-energized the electrical service to the Warner house. (Gross Depo. pp. 23, 28). Gross then walked back to the house, leaving his truck at the transformer pole. (Gross Depo. p. 28).

**{¶7}** At the house, Gross set up a ladder and attached a pulley or snatch block to it. (Gross Depo. p. 28). Gross climbed up the ladder and cut the service drop at the house connection. He then put a rope through the pulley and tied it to the service drop. Gross did not know where Plaintiff-Appellant Goodman was while he was doing this work. (Gross Depo. p. 28). He observed the Goodman's truck parked in the driveway. (Gross Depo. p. 28).

**{¶8}** Plaintiff-Appellant Goodman testified that he came out of the basement of the house where he had been working and saw Gross on the ladder cutting the service drop off the house. (Plaintiff's Depo. pp. 22-23). At that point, Goodman had unloaded all his equipment off his truck except for his 24-foot ladder. (Plaintiff's Depo. p. 21). After Gross climbed down the ladder, Gross and Goodman spoke for several minutes. The men discussed how long it would take Plaintiff-Appellant Goodman to do his job because Gross would not be able to re-energize the house until Goodman finished his work. (Gross Depo. pp. 19, 24; Plaintiffs Depo. p. 23).

**{¶9}** Gross stated that he was aware the Plaintiff would need to utilize a ladder to perform his work at the house, but that he did not expect that Goodman would use AEP's ladder to do so. (Gross Depo. p. 46). Gross stated that Plaintiff-Appellant Goodman never asked him for permission to use AEP's ladder. It is undisputed that the men did not have any discussion whatsoever about the use of a ladder at the job. (Plaintiffs Depo. p. 23; Gross Depo. p. 46).

**{¶10}** After their conversation, Gross walked behind the garage and around the block to the abandoned alley where the transformer pole and his truck were located. (Gross Depo. p. 28). He planned to pull the old service drop and the attached rope to the

pole, take off the old service drop, and tie the rope to the new service drop. He would then go back to the house and use the rope to pull the new service drop through the pulley to the house. (Gross Depo. pp. 31-32). Gross was utilizing the pulley on the ladder in order to keep the service drops high enough to clear the garage and easier to pull. (Gross Depo. p. 37). Gross believed that he would be done with this work before Plaintiff began to work outside on the house. (Gross Depo. p. 47). In fact, Gross believed, after their conversation, that Plaintiff-Appellant Goodman would be leaving the outside work area, although he did not see him leave. (Gross Depo. p. 47).

{¶11} After Gross left to return to the transformer pole, Plaintiff-Appellant Goodman climbed AEP's ladder and began removing clamps that held the entrance cable to the side of the house. (Plaintiff's Depo. pp. 26-27). Prior to climbing the ladder, Goodman noted that the ladder had been set up properly at about a 45-degree angle, and that there was a pulley attached to the ladder near the top. (Plaintiff's Depo. p. 26, 28, 30). He admitted that he did not know what the purpose of the pulley was, but saw that the service drop went through the pulley, hung down near the ground and then went up and over the garage. (Plaintiff's Depo. pp. 27-28, 43-44).

{¶12} After climbing the ladder, Plaintiff-Appellant Goodman held onto the ladder with one hand and was using a drill with his other hand. He was standing near the top of the ladder. (Plaintiff's Depo. p. 42). Although Goodman had observed the service drop going through the pulley before he climbed the ladder, he never saw the service drop move or heard any sound like it was moving. (Plaintiff's Depo. p. 29, 44). The top of the ladder seemed to move away from the house and started falling straight backwards. Goodman twisted to his left, pushed the ladder to the side and jumped off the ladder. He

landed on the concrete driveway. (Plaintiff's Depo. p. 29, 33-34, 45-46). Goodman admitted that he had not looked for Gross before he climbed the ladder, nor had he let anyone know he was going to be climbing the ladder before he went up. (Plaintiff's Depo. p. 28, 48). Further, he also did not yell any warning to let anyone know he was on the ladder when the ladder began to move away from the house. (Plaintiff's Depo. p. 48).

{¶13} During this time, Gross had gone up in the bucket truck by the transformer pole and cut the service drop at the pole. He then began to pull the old service drop toward him. The old service drop was attached to a rope and went through the pulley on the ladder. (Gross Depo. p. 30-31). After pulling the old service drop for 15 to 30 seconds, it became tight. Gross believed it was caught up in the tree branches that it was passing through, which happens frequently. He tugged on the service drop, but it did not move. He then gave a harder pull. About that time, he heard a yell and then heard what sounded like a ladder striking the ground. (Gross Depo. p. 32- 33). While Gross was in the bucket truck, he was not able to see the ladder or tell if anyone was on the ladder because of the density of the trees between the transformer pole and the house. (Gross Depo. p. 48). Likewise, Plaintiff-Appellant Goodman was unable to see if anyone was in the area near the pole because of the trees. (Plaintiff's Depo. p. 36). Gross lowered his bucket and walked back to the job site. He observed Goodman and the ladder lying on the ground. (Gross p. 34). Gross approached Goodman and was told that the ladder "came over" and that he had "jumped off the ladder." (Gross Depo. p. 34). Gross stated that he had never had a ladder fall when he was pulling a service drop through a pulley while doing this type of job. (Gross Depo. p. 35-36, 38)

{¶14} Plaintiff-Appellant Goodman filed a Complaint in the Guernsey County Common Pleas Court naming "American Electric Power" and John Does I through 5 as defendants. Plaintiff-Appellant Goodman alleged that the defendants negligently caused him to fall from a ladder. Defendant-Appellee Ohio Power Company dba American Electric Power filed an answer denying that it was negligent and setting forth the affirmative defense of assumption of the risk and trespass. Plaintiff-Appellant never amended his complaint to identify the John Does.

{¶15} Defendant-Appellee AEP moved for summary judgment on the grounds that it owed no duty to Plaintiff-Appellant Goodman to protect him from falling from the ladder because (1) Plaintiff-Appellant's accident was not reasonably foreseeable, (2) Plaintiff-Appellant assumed the risk of his actions, and (3) Plaintiff-Appellant was a trespasser as a matter of law.

{¶16} The trial court granted the motion of Defendant-Appellant AEP "on the basis of primary assumption of the risk."

{¶17} Appellant now appeals, assigning the following error for review:

### ASSIGNMENT OF ERROR

{¶18} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES."

### "Summary Judgment Standard"

{¶19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶20} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶21}** It is based upon this standard that we review Appellant's assignments of error.

## I.

**{¶22}** In his sole Assignment of Error, Appellant argues that the trial court erred in granting Appellee's motion for summary judgment. We disagree.

**{¶23}** As set forth above, in their motion for summary judgment, Appellee AEP argued that it owed no duty of care to Appellant because (1) Appellant's accident was not reasonably foreseeable, (2) Appellant assumed the risk of his actions, and/or (3) Appellant was a trespasser/unauthorized user of the ladder.

**{¶24}** In order to establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

**{¶25}** The elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

**{¶26}** Ohio law recognizes three categories of assumption of the risk as defenses to a negligence claim; express, primary, and implied or secondary. *Schnetz v. Ohio Dept. of Rehab. & Corr.,* 195 Ohio App.3d 207, 959 N.E.2d 554, 2011–Ohio–3927, ¶ 21 (10th Dist.); *Crace v. Kent State Univ.,* 185 Ohio App.3d 534, 924 N.E.2d 906, 2009–Ohio–6898, ¶ 10 (10th Dist.).

**{¶27}** In the present case, as stated above, the trial court granted summary judgment in favor of AEP based upon the doctrine of primary assumption of the risk.

**{¶28}** In the instant case, Appellee argues that the activity of climbing a ladder is an inherently dangerous activity and that by climbing the ladder in this case, Appellant assumed the risks associated with such activity.

**{¶29}** Upon review, this Court finds that an analysis under "primary assumption of the risk" is not necessary as we find Appellee herein owed no duty to Appellant.

**{¶30}** In *Brockman v. Bell,* 78 Ohio App.3d 508, 605 N.E.2d 445 (1992), the First District Court of Appeals observed that civil liability for negligence is predicated upon injury caused by the failure to discharge a duty recognized in law and owed to the injured party. The existence of a duty depends on the foreseeability of the injury. The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances, should have anticipated that injury to another was the probable result of his performance or nonperformance of an act. *Mashburn v. Dutcher,* 5th Dist. Delaware No. 12 CAE 010003.

**{¶31}** Here, it was not foreseeable that Appellant would climb onto Appellee's ladder, while Appellee was still using the ladder as evidenced by the service drop and rope strung through a pulley attached to the ladder, without permission or advance notice, when Appellant had his own ladder on the premises.

**{¶32}** It was undisputed that Mr. Gross had no knowledge that Appellant was on the ladder when he began pulling the service drop through the trees. Both Appellant and Gross each admitted that the line of sight between the transformer pole and the house was obstructed.

**{¶33}** Based on the lack of foreseeability in this case, we find no duty existed. Appellant's sole Assignment of Error is overruled.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., concurs.

Hoffman, J., dissents.

JWW/d 1118

*Hoffman, J., dissenting*

{¶35} I respectfully dissent from the majority opinion.

{¶36} The majority's decision is based upon a ground not decided by the trial court; i.e., foreseeability. The trial court's decision was limited to its determination Appellant assumed the primary risk of injury associated with the use of a ladder.[1]

{¶37} I would refrain from extending appellate review to issues not addressed by the trial court. While our standard of review in this case is, de novo, nevertheless it is first and foremost a standard of review. As stated by the Ohio Supreme Court in *Murphy v. City of Reynoldsburg,* (1992) 65 Ohio St.3d 356, "A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, become a trial court" Id, at 360. Because the trial court did not decide based upon its review of the evidence whether Appellant's presence on the ladder was foreseeable, I believe this Court should refrain from doing so at this stage of the proceedings.

---

[1] I disagree with the trial court's finding primary assumption of the risk bars Appellant's claim. I do not find the risk of a ladder being pulled over by a third person is an inherent risk directly associated with its primary use.