OPINION
{¶ 1} Plaintiffs-appellants, Angel Fields ("Angel"), and her mother and step-father, Tracy and Greg Davis, appeal a decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, Talawanda School District Board of Education, Talawanda School District, and Talawanda High School.
 {¶ 2} On January 8, 2003, Angel was a student at the Talawanda High School. That *Page 2 
day, Angel sustained multiple amputations to the fingers and a portion of her right hand while operating a jointer machine during an industrial arts class taught by appellees' employee, Anthony Limberios. A jointer machine is used and is equipped with a safety guard which covers the blade when not in use. When surfacing a board on a jointer machine, an operator uses a push block to push the board through so that one's hands are not exposed to the blade. As the board is pushed through, it pushes against the guard which swings out. Once the board has gone through, the guard swings back and covers the blade. On the day she was injured, Angel was using a push block which had been handmade at the school, had a knob on the front and a handle on the back, and had a lip (a.k.a. a fixed heel or rear step) at the rear.
 {¶ 3} According to Angel, she was pushing the board across the blade, using the push block. Her left hand was on the knob, her right hand was on the back handle. As soon as the board cleared the blade, there was a release of resistance as Angel was no longer pushing against the blade. This caused a jerk which caught her off guard. "[W]hen it did, I guess the [back] handle was loose, I guess I must have jumped, and my [right] hand just relaxed. My shoulder probably relaxed * * *, and my hand went into the blades that were exposed." When her right hand came off the push block, the end of the push block was about three inches past the blade. Her left hand never came off the knob. After the board went through the blade, the guard started to swing back and hit the side of the push block which was either flush with or slightly wider than the board.
 {¶ 4} Angel and the Davises filed a complaint against appellees alleging that Angel's injuries were caused by the negligent and reckless acts of appellees' employees and the physical defects within or on the grounds of the buildings. Specifically, appellants asserted that the push block Angel was instructed to use was a handmade device made in the school, even though the school had several manufactured push blocks; was not designed to work *Page 3 
with the guard of the jointer machine; did not meet or comply with the manufacturer's safety instructions; did not comply with appellees' own rules regarding classroom use of equipment; and violated Ohio's Occupational Safety and Health Rules ("OSHA rules"). Appellees moved for summary judgment on immunity grounds under R.C. Chapter 2744.
 {¶ 5} On January 10, 2008, the trial court granted summary judgment to appellees on the ground they were immune from liability under R.C. 2744.03(A)(5). The trial court found that there was "no evidence to show that Limberios' instructions, tests, and teaching methods were performed in a wanton or reckless manner. Further, the evidence presented on Limberios' decision to utilize the hand-made push block as opposed to the manufactured one, despite its differences in size, shape, and design, does not rise to the level of wanton or reckless."
 {¶ 6} Appellants appeal, raising one assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING IMMUNITY TO DEFENDANTS-APPELLEES."
 {¶ 8} Appellants argue that the trial court improperly granted summary judgment because there are genuine issues of material fact as to whether Limberios acted recklessly. They further argue that the use of equipment by a political subdivision employee cannot be a discretionary matter when the equipment does not comply with applicable safety standards.
 {¶ 9} This court reviews a trial court's decision on summary judgment de novo. White v. DePuy, Inc. (1999), 129 Ohio App.3d 472, 478. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Id. at 479. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to *Page 4 
have the evidence construed most strongly in his favor. Civ. R. 56(C);Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 10} The process of determining whether a political subdivision is immune from liability involves a three-tiered analysis. Elston v.Howland Local Schools, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 10. The first tier provides a general grant of immunity to political subdivisions regarding acts or omissions of the political subdivision or its employees in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). In this case, it is undisputed that appellees are political subdivisions as defined in R.C. 2744.01(F), engaged in a governmental function as defined in R.C. 2744.01(C)(2)(c).
 {¶ 11} The second tier involves exceptions to immunity located in R.C. 2744.02(B). In particular, R.C. 2744.02(B)(4) provides that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function[.]" The exception in R.C. 2744.02(B)(4) applies here. See Banchich v. Port Clinton Pub. SchoolDist. (1989), 64 Ohio App.3d 376; Bolling v. N. Olmsted City Schools Bd.of Edn., Cuyahoga App. No. 90669, 2008-Ohio-5347 (both involving injuries resulting from the operation of a jointer machine).
 {¶ 12} Finally, under the third tier, immunity may be reinstated if a political subdivision can successfully assert one of the defenses listed in R.C. 2744.03. This case concerns the application of the defense in R.C. 2744.03(A)(5). Under R.C. 2744.03(A)(5), "a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining how to use equipment or facilities unless that judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Elston, 2007-Ohio-2070 at ¶ 32. *Page 5 
 {¶ 13} We first reject appellants' assertion that when equipment used by a political subdivision does not comply with applicable safety standards, the use of the equipment is not an exercise of judgment or discretion, and therefore the political subdivision is not entitled to immunity under R.C. 2744.03(A)(5). We note that appellants do not cite any case law in support of the assertion. Further, Ohio courts have held that the use or non-use of equipment or safety devices constitutes an exercise of judgment or discretion within the purview of R.C. 2744.03(A)(5). See, e.g., Banchich, 64 Ohio App.3d 376 (manner in which teacher in carpentry class instructed and supervised student's use of power jointer, and teacher's maintenance and inspection of power jointer were discretionary acts); Wilson v. Canton City School Dist. (Sept. 16, 1991), Stark App. No. CA-8436 (school district and teacher immune where student suffered injury while using power table saw with guard up and out of position; injury resulted from the exercise of teacher's judgment or discretion in determining how to use equipment); Goodin v. AlexanderLocal School Dist. (Mar. 26, 1993), Athens App. No. 92 CA 1531 (involving the use of a table saw not equipped with a safe guard).
 {¶ 14} Appellants also argue that there are genuine issues of material fact as to whether Limberios acted recklessly. Appellants assert Angel "was injured directly as a result of being provided a defective, dangerous, home-made device" which was neither in compliance with OSHA or textbook design, by "a teacher who had purchased and had available in the classroom safety devices which were both OSHA-compliant and textbook for use on what he knew was `one of the MOST DANGEROUS machines in the woodshop' but simply decided not to provide to [Angel] for use on that machine." The manufactured push blocks ordered by Limberios were designed with a friction pad and did not have a lip.
 {¶ 15} An actor's conduct "is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having *Page 6 
reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Distilled to its essence, * * * recklessness is a perverse disregard of a known risk. Recklessness, therefore, necessarily requires something more than mere negligence. In fact, the actor must be conscious that his conduct will in all probability result in injury." O'Toole v. Denihan,118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 73-74 (internal citations omitted); Barnes v.Meijer Dept. Store, Butler App. No. CA2003-09-246, 2004-Ohio-1716
(reckless is a complete disregard for the care and safety of others, indifference to the consequences, with a belief that probable harm will result).
 {¶ 16} Showing recklessness is subject to a high standard. Rankin v.Cuyahoga Cty. Dept. of Children and Family Servs., 118 Ohio St.3d 392,2008-Ohio-2567, ¶ 37. Thus, although the determination of recklessness is typically within the province of the jury, summary judgment is appropriate in instances where the individual's conduct does not demonstrate a disposition to perversity. O'Toole at ¶ 75; Fabrey v.McDonald Village Police Dept., 70 Ohio St.3d 351, 1994-Ohio-368.
 {¶ 17} As part of the industrial arts class, Limberios instructed his students, including Angel, in the safe use of the machinery in the woodshop. Safety rules were detailed, explained, posted in the woodshop, and followed. Before students were allowed to use a particular machine, the students and Limberios would use an educational textbook and read the chapter and notes regarding the machine. The students were then required to score 100 percent on a test for each machine; observe Limberios demonstrate how to safely use the machine; and in turn successfully demonstrate to Limberios the proper and safe use of that machine. Angel was certified to use the jointer machine by Limberios on December 14, 2002. *Page 7 
 {¶ 18} When Limberios began teaching at the school, he brought all the woodshop machinery up to OSHA standards and had a company inspect the machines to ensure they were certified to run properly; the educational textbook used in class was already at the school; likewise, the jointer machine and the push block used by Angel were already at the school; although the school had two jointer machines, it only had one push block (the handmade one); as a result, Limberios purchased two push blocks; the manufactured push blocks were different in size, shape, and design and had a friction pad and no lip. According to Limberios, the manufactured push blocks did not meet the textbook specifications: the absence of a lip made them more dangerous because of a risk of slippage.
 {¶ 19} Limberios explained that once a board goes through the blade of a jointer machine, the board travels a few inches before the guard closes; thus, the blade is exposed at that time until the guard snaps back into position over the blade. Students were instructed to never have their hands on the board as it is going over the blade and to use a push block instead. Students were taught to keep their hands outside of "the red zone," that is, the area of the blade. Classroom safety rules for jointer machines attached to Angel's deposition state: "Never allow your hand to pass directly over the cutterhead [blade]," and "Use a push block to push stock through the machine when planing the face of a board."
 {¶ 20} Appellants' expert faulted the accident on the use of the handmade push block, its loose back handle, its lip, and the fact it was wider than the board. According to the expert, the presence of the lip and the wider width prevented the guard from closing sooner than if Angel had used a manufactured push block, thus subjecting her to great harm. By contrast, the use of a manufactured push block (which has no lip) would have allowed an operator such as Angel to move her hands away from the rear end of the board, and thus away from the exposed blade. As a result, "the design, fabrication and maintenance of the [handmade] push block * * * was defective, unsafe and unreasonably dangerous and was a *Page 8 
primary in the cause of the accident." The expert, however, did not know how long the closing was delayed because of the design of the handmade push block; nor did he know how far past the blade the board would have to go before the guard would close, had the handmade push block been narrower than the board. The expert also did not know what part the loose handle played in the accident.
 {¶ 21} The expert also stated that the handmade push block did not comply with OSHA rules or rules from the National Safety Council. Copies of the pertinent rules were attached to his deposition. The rules are general safety rules regarding woodworking machinery and machine guarding and do not refer to push blocks. For example, the pertinent National Safety Council rule states: "To reduce the possibility of serious injury, the worker should be provided with the right type of equipment that is fully guarded to do the job safety. * * * It is important that the hands be kept as far away as possible from the point of operation." The pertinent OSHA rule states that "[s]pecial handtools for placing and removing material shall be such as to permit easy handling of material without the operator placing a hand in the danger zone. Such tools shall not be in lieu of other guarding * * * but can only be used to supplement protection provided." The rule further indicates that a jointer machine is one of the machines that requires point of operation guarding. Finally, the expert did not know what caused Angel's hand to come off the back handle.
 {¶ 22} Viewing the evidence most strongly in favor of appellants, Limberios' actions were not, as a matter of law, reckless. There is no evidence that Limberios' instructions, tests, and teaching methods were performed in a complete disregard for the care and safety of his students, including Angel, with indifference to the consequences, and with a belief that probable harm would result. Likewise, there is no evidence that Limberios' decision to use the handmade push block rather than the manufactured push blocks he had ordered, despite their differences in size, shape, and design, was made with a perverse disregard of a known *Page 9 
risk, or that he was conscious that this decision would in all probability result in injury. Limberios' conduct simply does not demonstrate a disposition to perversity. See O'Toole, 2008-Ohio-2574.
 {¶ 23} The trial court, therefore, properly granted summary judgment in favor of appellees on the ground they were immune under R.C. 2744.03(A)(5). Appellants' assignment of error is overruled.
 {¶ 24} Judgment affirmed.
 BRESSLER, P.J., and POWELL, J., concur. *Page 1