JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} The Cuyahoga County Department of Children and Family Services ("D.C.F.S.") and social worker Elizabeth McGovern appeal from the order of the trial court that denied their motions for summary judgment in an action brought by Chad Brenner, Administrator of the Estate of Chamaria Drake, for wrongful death and other claims. For the reasons set forth below, we reverse that order and remand for further proceedings consistent with this opinion.
 {¶ 2} This action arises from the death of 18-month-old Chamaria Drake following court-ordered reunification with her then-17-year-old mother, Sharnese Brock, while Brock was in foster care. Plaintiff filed this action on March 24, 2004, against D.C.F.S., McGovern, Brock, Brock's former social worker Barbara Branch, the Cuyahoga County Board of Commissioners, Bellefaire Jewish Children's Bureau (hereafter "Bellefaire"), and various John Doe defendants. With regard to the county defendants, plaintiff set forth claims pursuant to42 U.S.C. Sec. 1983, wrongful death, conscious pain and suffering, and failure to report and investigate child abuse under R.C. 2151.42(A)(1) and *Page 4 
R.C. 2151.421(F)(1). With regard to Brock, plaintiff maintained that Brock negligently, intentionally, and maliciously assaulted and battered Chamaria.
 {¶ 3} Defendants removed the matter to federal court. Branch and Bellefaire were dismissed from the action. Thereafter, in an order dated September 28, 2006, the federal court entered summary judgment in favor of the county defendants, and remanded the state claims to the court of common pleas. See Brenner v. Cuyahoga Cty. Dept. of Children FamilyServs. (N.D. Ohio 2006), Case No. 1:04CV727.
 {¶ 4} D.C.F.S. and McGovern filed joint motions for summary judgment. D.C.F.S. asserted that it is entitled to immunity under R.C. Chapter 2744, and the Supreme Court's decision in Rankin v. Cuyahoga Cty. Dept.of Children Family Servs., 118 Ohio St.3d 392, 2008-Ohio-2567,889 N.E.2d 521, in which the court held that the common law exception to the public duty rule cannot establish the basis for liability against a political subdivision. McGovern asserted that she is entitled to immunity in connection with her role as a witness at the reunification hearing and pursuant to R.C. 2744.03, because she did not act or fail to act with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 5} In opposition, plaintiff argued that "Defendants knew that Sharnese was not fit or ready to be a mother, yet they recommended her reunification with Chamaria," and that defendants knew that following reunification "Sharnese *Page 5 
was `struggling,' `stressed,' and `overwhelmed' by her new role as a parent, yet they did nothing."
 {¶ 6} On June 2, 2008, the trial court denied both motions. Defendants now appeal and assert four errors for our review.
 {¶ 7} In the first assignment of error, defendants assert that the trial court erred in denying immunity to the D.C.F.S. and in failing to conclude that the special duty rule does not present an exception to immunity under R.C. Chapter 2744.
 {¶ 8} Plaintiff agrees that pursuant to Rankin v. Cuyahoga Cty. Dept.of Children Family Servs., the claims against the Board of Commissioners cannot be sustained. Moreover, defendants' arguments are sufficient to sustain a reversal of the judgment as to the county in this matter. Rankin is controlling herein. The D.C.F.S. is, pursuant to the express holding of Rankin, a political subdivision performing a governmental function that is subject to sovereign immunity. Further, under the facts presented, none of the five exceptions to immunity listed in R.C. 2744.02(B), applies herein. As noted in Rankin, "as the special-relationship exception is not codified in R.C. 2744.02(B) * * * it is therefore not an independent exception to a political subdivision's general immunity from liability." Id.
 {¶ 9} This assignment of error is well-taken and the matter is reversed as to the Department of Children and Family Services. *Page 6 
 {¶ 10} The first assignment of error is well-taken.
 {¶ 11} In the second and third assignments of error, defendants assert that the trial court erred in denying immunity to social worker Elizabeth McGovern as a witness in a judicial proceeding in connection with the claims raised against her for advocating reunification of Chamaria and Sharnese. Defendants further assert that the trial court erred in denying McGovern immunity pursuant to R.C. Chapter 2744 for the post-reunification claims.
Witness Privilege
 {¶ 12} Social workers are absolutely immune for actions that are "intimately associated" with the judicial phase of proceedings relating to the welfare of a child. Rippy v. Hattaway (6th Cir. 2001),270 F.3d 416 (social workers who initiate proceedings related to the welfare of a child are entitled to absolute immunity while functioning in roles intimately associated with the judicial phase of proceedings);Salyer v. Patrick (6th Cir. 1989), 874 F.2d 374 (family service workers were absolutely immune from liability in filing the juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings); Kurzawa v. Mueller (6th Cir. 1984),732 F.2d 1456, 1458. Similarly, in Holloway v. Brush (6th Cir. 2000),220 F.3d 767, the United States Court of Appeals for the Sixth Circuit Court noted that when social workers are acting as legal advocates, they are entitled to absolute immunity. The Court stated: *Page 7 
 {¶ 13} "The analytical key to prosecutorial immunity, therefore, is advocacy — whether the actions in question are those of an advocate. By analogy, social workers are absolutely immune only when they are acting in their capacity as legal advocates — initiating court actions or testifying under oath — not when they are performing administrative, investigative, or other functions. The case before us turns on whether the actions of which [the plaintiff] complains were taken by [the social worker] in her capacity as a legal advocate." Id. at 775. Accord,Dever v. Casbeer, Hamilton App. No. C-050106, 2005-Ohio-5860 (social worker was entitled to absolute immunity in connection with her trial testimony concerning allegations of molestation).
 {¶ 14} Further, in O'Donnell v. Brown (W.D. Mich. 2004),335 F.Supp.2d 787, the court held that a social worker's recommendation to a family court, as well as her investigation leading up to her recommendation, related to the initiation of judicial proceedings, and thus fell within the scope of absolute immunity.
 {¶ 15} Applying the foregoing, we hold that defendant McGovern was absolutely immune in connection with her role as the legal advocate/court's witness in favor of the reunification of Chamaria with Sharnese. It is beyond dispute that reunification would not have occurred absent an order of the court. McGovern's role in advocating reunification as a court witness entitles her to absolute immunity. In any event, her recommendation to the juvenile court, as *Page 8 
well as her investigation leading up to her recommendation, relate to the initiation of judicial proceedings, and thus fall within the scope of absolute immunity. O'Donnell, supra, 335 F.Supp.2d at 826-27. Plaintiffs claims insofar as they are directed at this portion of McGovern's conduct must therefore fail as a matter of law.
R.C. Chapter 2744 Analysis
 {¶ 16} "Pursuant to R.C. 2744.03(A)(6), an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code." Cramer v. AuglaizeAcres, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9.
 {¶ 17} In this matter, the parties dispute whether McGovern acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 18} In Rankin, supra, the court explained that "showing recklessness is subject to a high standard." The supreme court has defined the term "reckless" to mean that the conduct was committed "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."Cater, supra, 83 Ohio St.3d at 33, 697 N.E.2d 610, quotingMarchetti *Page 9 v. Kalish (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, fn. 2, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. "`[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury.'Fabrey v. McDonald Village Police Dept, 70 Ohio St.3d 351, 356,1994-Ohio-368, 639 N.E.2d 31, quoting Roszman v. Sammett (1971),26 Ohio St.2d 94, 96-97, 55 O.O.2d 165, 269 N.E.2d 420."
 {¶ 19} In O'Toole v. Denihan, 118 Ohio St.3d 374, 2008-Ohio-2574,889 N.E.2d 505, a case also involving immunity, the court also addressed what constitutes reckless conduct for purposes of statutory political subdivision immunity and stated as follows:
 {¶ 20} "[A]n actor's conduct `is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' * * * Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk." Id. at ___73. *Page 10 
 {¶ 21} "Recklessness, therefore, necessarily requires something more than mere negligence. * * * In fact, `the actor must be conscious that his conduct will in all probability result in injury.'" Id. at ___74; see, also, Rankin, supra. Unless the individual's conduct does not demonstrate a disposition to perversity as a matter of law, the determination of recklessness is within the province of the jury.
 {¶ 22} In Boiling v. N. Olmsted City Schools. Bd. of Edn., Cuyahoga App. No. 90669, 2008-Ohio-5347, this court additionally explained wanton and willful misconduct as follows:
 {¶ 23} "`Wanton conduct' involves failure to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result." Gladon v. Greater Cleveland Regional Transit Auth.,75 Ohio St.3d 312, 1996-Ohio-137, 662 N.E.2d 287. The term "implies intent relating to misconduct rather than relating to result, so that intent to injure need not be shown." Brockman v. Bell (1992), 78 Ohio App.3d 508,605 N.E.2d 445.
 {¶ 24} "In contrast, `willful misconduct' involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. Id. Consequently, `willful misconduct' is defined as: `an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or *Page 11 
purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" Fogle v. Bentleyville, Cuyahoga App. No. 88375, 2008-Ohio-3660, ___47, quoting Whitfield v. City ofDayton, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, quotingBrockman, supra.
 {¶ 25} In this matter, the undisputed evidence demonstrated that in 2000, Sharnese was expelled from school for fighting. She had been adjudicated as unruly, and in 2001, Sharnese, who was then 15 years-old, became pregnant. Her mother, Patreace Brock, asked the county to remove her from the home because of unruly behavior and because Sharnese allegedly sexually assaulted a six-year-old.[1] Sharnese was placed in the temporary custody of the D.C.F.S. On July 17, 2001, then-15-year-old Sharnese gave birth to Chamaria. The father of the child was unable to care for her and Sharnese was living at Euclid House, a home for troubled teens. Chamaria was taken into county custody shortly after her birth and placed in the foster care of Albert and Belinda Williams. According to McGovern, reunification was always the goal for Chamaria.
 {¶ 26} By November 2001, Sharnese was placed in residential treatment at Bellefaire. Her treating psychotherapist was Dr. Robert Polish and her case worker was Travena Golliday. At this time, Sharnese's social worker recommended that she work on anger management and possible depression. Sharnese stated that she did not need services but wanted to "prove to everyone *Page 12 
that she can take care of her daughter."
 {¶ 27} One year later, Sharnese was placed in foster care at the home of Traunita Williams, but continued to be seen by the Bellefaire therapists. Her Individualized Service Plan ("ISP") established in December 2002, indicated, in relevant part, that her case worker would facilitate moving Chamaria in with Sharnese when Sharnese demonstrated stability. According to plaintiffs witness, Margie Mack, Sharnese indicated that she did not want to care for Chamaria and stated, "I am afraid if she cries, I won't know what to do, and I might hurt her." Affidavits from Albert and Belinda Williams reiterated this statement.
 {¶ 28} In the time period from July 2002 to January 2003, Sharnese had been cleared of the rape charges leveled against her, had completed parenting classes, and had successful visits with her daughter. In January 2003, Defendant McGovern held a semi-annual review ("SAR") of the matter with Patreace Brock, the foster parents of both Chamaria and Sharnese, and the Bellefaire treatment team. Following this meeting, McGovern used a system entitled SDM, Structured Decision-Making, and completed a risk and safety assessment and then determined that Chamaria could be reunited with Sharnese. In undertaking this assessment, McGovern noted that Sharnese had completed parenting classes, had been acquitted of the sexual assault charges *Page 13 
leveled against her, had been discharged from Bellefaire, had stepped down to foster care, and had successfully spent time with Chamaria. She subsequently notified the individuals in attendance of the time and place of a reunification hearing before a juvenile court judge.
 {¶ 29} A reunification hearing was held on January 23, 2003. Evidence in the record indicates that Sharnese's guardian ad litem was in favor of reunification and McGovern testified in favor of reunification. Sharnese admitted that she told the judge that she wanted custody of Chamaria, but she stated that she did so as the result of pressure from her mother and from McGovern. The judge indicated that upon review of the record, Sharnese met the requirements for reunification and asked if any of the persons in attendance, including Bellefaire social worker Travena Golliday, Albert and Belinda Williams, and Patreace Brock, voiced an objection and the court returned Chamaria to the custody of Sharnese.
 {¶ 30} Approximately one week later, Sharnese's foster mother notified McGovern that Sharnese was stressed and depressed and that she had scheduled a psychiatric appointment for her.
 {¶ 31} On February 18, 2003, Albert and Belinda Williams, the former foster parents of Chamaria, advised defendant McGovern that they believed Sharnese was "being too rough" with Chamaria and that it did not seem as though Sharnese wanted to be a parent. Ms. Galliday, the social worker from *Page 14 
Bellefaire indicated that a "staffing" was scheduled for February 24, 2003 and that there were issues surrounding Sharnese's parenting.
 {¶ 32} Also on February 18, 2003, McGovern learned that Sharnese's foster mother had taken Chamaria to the hospital for a small cut on her head that reportedly occurred when the child fell out of bed and her hair barrette caused a laceration. Sharnese's foster mother additionally stated that the child had several superficial cuts on her legs which Sharnese had accidentally caused while changing her diaper. It is undisputed that neither the doctor who saw the child nor McGovern initiated abuse investigations in connection with this incident. McGovern stated that she discussed the matter with her supervisor and the matter was not referred to the 696-KIDS hotline for investigation. According to McGovern, the scratches did not indicate abuse, and Patreace indicated that Sharnese had accidentally scratched Chamaria with her fingernails.
 {¶ 33} Patreace Brock also informed McGovern that Sharnese had accidentally scratched the child, but she feared that Sharnese was too rough with her and stated that Sharnese needed parenting classes. Sharnese's foster mother Truanita Williams never observed any abuse or rough treatment, however.
 {¶ 34} On February 19, 2003, Sharnese informed McGovern that she did not think that she could handle a baby and did not want Chamaria. McGovern *Page 15 
stated that she would speak to her supervisor about the matter and they would discuss it further at the staffing scheduled later in the week. On this same date, McGovern examined Chamaria and observed superficial scratches and Sharnese was advised to cut her nails before handling the baby.
 {¶ 35} At the staffing, Sharnese indicated that she needed more support from her family. She also requested that Mr. and Mrs. Williams "stay out of it for the time being," because she was trying to bond with Chamaria and the infant was confused from visits with the Williamses.
 {¶ 36} By March 5, 2003, Patreace advised McGovern that "perhaps Chamaria needs to be back with [her] foster parents." Truanita Williams, Sharnese's foster mother, stated that she still needed to "redirect some of [Sharnese's] more aggressive behaviors" but Sharnese is "doing alright." According to McGovern, there was no hotline referral for Sharnese's allegedly "rough" treatment of Chamaria because these were "bonding" issues and stress management issues that may occur with teenage mothers. McGovern further stated that she never thought at any time that Sharnese would harm Chamaria. Robert Polish, Sharnese's therapist at Bellefaire, expressed surprise that Sharnese and Chamaria had been reunified so quickly. He testified that, although Sharnese was struggling with caring for her daughter, he had no fear that Sharnese would harm her. *Page 16 
 {¶ 37} On March 10, 2003, Chamaria was taken to the Bedford Medical Center of University Hospitals because she "had an episode where she seemed to be looking around and her head was bopping in different directions." The treating physician indicated that he did not believe that the occurrence had a "dangerous etiology" and he discharged Chamaria to her mother. Three days later, the child suffered blunt head trauma at the hands of Sharnese and later died.[2]
 {¶ 38} From all of the foregoing, we conclude that, although plaintiff has presented significant evidence to challenge McGovern's decision to reunify Chamaria and Sharnese, that decision later became the decision of the court and McGovern is entitled to immunity therefrom, as set forth supra.
 {¶ 39} With regard to whether McGovern acted with malicious purpose, in bad faith, or in a wanton or reckless manner in connection with her post-reunification conduct, we conclude that it does not, as a matter of law, meet this threshold for overcoming sovereign immunity. As a matter of law, the evidence does not establish that McGovern knew or had reason to know facts that would lead a reasonable person to realize, not only that her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make the conduct negligent. As a matter of law we cannot say that she was conscious that her *Page 17 
conduct would, in all probability, result in injury, and was therefore reckless. As a matter of law, we cannot say that she engaged in wanton and willful misconduct, as there was no evidence that she failed to exercise any care whatsoever toward Sharnese and Chamaria, or that the circumstances were such that there is great probability that harm would result. Moreover, as a matter of law, we cannot say there was willful misconduct, as there was no evidence of an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury. Moreover, the record does not establish that she violated her duties under R.C. 2151.421.
 {¶ 40} The record indicates that post-reunification, McGovern was informed that Sharnese was "stressed and depressed" and was to see her psychotherapist. She also received information that Sharnese was being too rough with Chamaria and that it did not seem as though Sharnese wanted to be a parent, but McGovern established that these issues are common with teen mothers and there was no evidence that Sharnese might harm her baby. The record next indicates that Chamaria was seen by physicians for a "spell" which the doctor determined had no "dangerous etiology," and minor cut on her head from a barrette. The physicians, mandatory reporters under R.C. 2151.421, did not *Page 18 
refer these matters for investigation. McGovern saw Chamaria, then discussed the matter with her supervisor, who indicated that no referral was needed.
 {¶ 41} McGovern further stated that she never thought at any time that Sharnese would harm Chamaria. Robert Polish, Sharnese's therapist at Bellefaire, stated that he had no fear that Sharnese would harm her. As a matter of law, we find the evidence insufficient to overcome sovereign immunity under R.C. 2744.03, and the trial court erred in denying McGovern's motion for summary judgment.
 {¶ 42} For the fourth assignment of error, defendants assert that the trial court erred in denying defendants' motion for summary judgment on the basis of lack of probable cause. This assignment of error is moot under App. R. 12.
 {¶ 43} For all of the foregoing reasons, the trial court erred in denying the motions for summary judgment filed by the D.C.F.S. and McGovern. The order is reversed and the matter is remanded for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee its costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 19 
COLLEEN CONWAY COONEY, A.J., CONCURS IN JUDGMENT ONLY; CHRISTINE T. MCMONAGLE, J., CONCURS IN JUDGMENT ONLY
[1] Sharnese was later found not guilty of this charge.
[2] Sharnese pled guilty to involuntary manslaughter in connection with Chamaria's death. *Page 1