[Cite as *Martin v. Bd. of Edn. for Mid-E. Career & Technology Ctrs.*, 2011-Ohio-5753.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TRUDY MARTIN ET AL., | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants, | : | Hon. Sheila G. Farmer, J |
| | : | Hon. Julie A. Edwards, J. |
| v.- | : | |
| | : | |
| BOARD OF EDUCATION FOR THE | : | Case No. CT11-0015 |
| MID-EAST CAREER AND | : | |
| TECHNOLOGY CENTERS ET AL., | : | |
| | : | |
| Defendants-Appellees. | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. CC2009-0469


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            November 3, 2011


APPEARANCES:

For Plaintiffs-Appellants                For Defendants-Appellees

DANIEL M. BALGO                          RICHARD A. WILLIAMS
SCOTT H. KAMINSKI                        JOSH L. SCHOENBERGER
156 Woodrow Avenue                       338 South High Street, 2nd Floor
St. Clairsville, OH  43950               Columbus, OH  43215

*Farmer, J.*

{¶ 1}　On October 2, 2008, appellant, Janelle Martin, was a junior at Mid-East Career and Technology Center.　On said date, she sustained injuries to her hand while operating a log splitter machine while in a natural resources lab class.　Janelle's teacher was appellee, Brian Wilfong.

{¶ 2}　On June 18, 2009, Janelle's mother, Trudy Martin, as parent and next friend of Janelle Martin, filed a complaint against the school and appellee alleging in pertinent part willfull, wanton, and reckless student supervision and student training and education.　The school was subsequently dismissed on June 7, 2010.

{¶ 3}　On November 23, 2010, appellee filed a motion for summary judgment. By judgment entry filed March 7, 2011, the trial court granted the motion and dismissed appellants' claims.

{¶ 4}　Appellants filed an appeal and this matter is now before this court for consideration.　Assignment of error is as follows:

I

{¶ 5}　"THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE WILFONG'S MOTION FOR SUMMARY JUDGMENT UNDER CIVIL RULE 56(C).　THE DECISION WAS IN ERROR AND SHOULD BE REVERSED."

I

{¶ 6}　Appellants claim the trial court erred in granting summary judgment to appellee under the sovereign immunity doctrine as there are genuine issues of material fact as to whether appellee acted willfully, wantonly, or recklessly in failing to train and supervise Janelle in the use of the log splitter.　We disagree.

{¶ 7}   Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.   Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶ 8}   "Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶ 9}   As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.  *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶ 10} An employee of a political subdivision is immune from liability in a pure negligence action.  However, as conceded by the parties, an employee may be liable for actions that are willful, wanton, or reckless:

{¶ 11} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

{¶ 12} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

{¶ 13} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

{¶ 14} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee." R.C. 2944.03(A)(6).

{¶ 15} In discussing the issue of wanton and reckless acts as it relates to employees of political subdivisions, the Supreme Court of Ohio has set forth the following definitions:

{¶ 16} "The standard for showing wanton misconduct is, however, high. In *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus, we held that wanton misconduct was the failure to exercise any care whatsoever. In *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96-97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 422, we stated, 'mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. *Id.* at 97, 55 O.O.2d at 166, 269 N.E.2d at 423. In *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, we employed

the recklessness standard as enunciated in 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500: 'The actor's conduct is in reckless disregard of the safety of others if ***such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Fabrey v. McDonald Village Police Department,* 70 Ohio St.3d 351, 356, 1994-Ohio-368.

{¶ 17} This court has set forth these same definitions in *Marchant v. Gouge,* 187 Ohio App.3d 551, 2010-Ohio-2273, ¶31-34.

{¶ 18} The claims in the complaint filed June 18, 2009 allege the following in pertinent part:

{¶ 19} "21. The log splitter machinery is a dangerous instrumentality that has high risk potential for serious bodily injury or death.

{¶ 20} "22. The use of this log splitter by an unsupervised high school student carries an unreasonable high risk of resulting in serious bodily injury or death.

{¶ 21} "23. The defendants breached the duty to properly supervise students in the defendant's care and custody by willfully and wantonly or recklessly allowing unsupervised use of this log splitter by a high school student.

{¶ 22} "26. Defendants had a duty to properly train and educate students regarding the operation of dangerous equipment while the students are in the custody of the defendants.

{¶ 23} "27. The log splitter machinery is a dangerous instrumentality that has high risk potential for serious bodily injury or death.

{¶ 24} "28. The use of this log splitter by an untrained and uneducated high school student carries an unreasonably high risk of resulting in serious bodily injury or death.

{¶ 25} "29. The defendants breached the duty [to] properly train and educate students regarding the operation of dangerous equipment while the students were in the custody of the defendants by willfully and wantonly or recklessly allowing untrained and uneducated use of a log splitter machine by a high school student."

{¶ 26} In his motion for summary judgment filed November 23, 2010, appellee argued Janelle's own testimony illustrated the operative facts and his actions were not willful, wanton, or reckless:

{¶ 27} "1) She knew Defendant Wilfong was not able to supervise all students at all times and that Defendant Wilfong rotated from group to group.  (Plaintiff Depo, p. 28, ln. 10-12; p. 78, ln 1-7);

{¶ 28} "2) She was not instructed by Defendant Wilfong to start operating the log splitter in his absence.  (Plaintiff Depo, p. 82, ln. 13-23; p. 48, ln. 10-13);

{¶ 29} "3) She 'jumped in' without knowing what to do or how to do it.  (Plaintiff Depo, p. 82, in. 3-7; p. 50, ln. 2-6);

{¶ 30} "4) She had been instructed and understood not to use equipment, including power tools, until receiving instructions on their safe handling by proper authority.  (Plaintiff Depo, p. 38, ln. 5-21; p. 40-41, ln. 25-8); and

{¶ 31} "5) She had never used or been asked to use a piece of equipment in a natural resources lab without first receiving hands-on or classroom instruction on that equipment.  (Plaintiff Depo, p. 90, ln. 20-25.)"

{¶ 32} In their response brief filed January 18, 2011, appellants argued there still remained a question of fact on appellee's actions:

{¶ 33} "Reasonable minds could certainly reach differing conclusions on the issues of whether Defendant Wilfong acted recklessly, wantonly, and/or willfully in failing to train or educate Plaintiff Martin on safe use of the log splitter and in failing to supervise her use of the log splitter. The record before this court is replete with evidence that Defendant Wilfong failed to train or educate and failed to supervise Plaintiff Martin. Defendant Wilfong's deposition testimony shows that Plaintiff Martin's injury happened on her first day using the wood splitter and that he allowed her to use the wood splitter without first verifying that she had received the required 15 to 20 minute safety lecture on that dangerous piece of equipment and without first observing her using the wood splitter safely. (Deposition of Defendant Wilfong, p. 19 lines 5-11, 14-18). Defendant Wilfong's testimony further establishes that he provided no safety demonstrations to Plaintiff Martin with respect to the log splitter before assigning her to it, nor did he provide adequate supervision to Plaintiff Martin at the time of her injury. (Deposition of Defendant Wilfong, p. 10, lines 3-8; p. 14, lines 6-12.) When Plaintiff Martin's hand was crushed, Defendant Wilfong was standing in the lab, 60 yards away. (Deposition of Defendant Wilfong, p. 6, lines 15-24.) From where he was standing, he did not realize that Plaintiff Martin was injured until she ran into the lab and told him. (Deposition of Defendant Wilfong, p. 7, lines 5-12.) From this evidence, jurors could reasonably conclude that Defendant Wilfong acted recklessly, wantonly, and/or willfully in failing to train or educate Plaintiff Martin on safe use of the log splitter and in failing to supervise her use of the log splitter."

{¶ 34} On the day of the incident, Janelle was in appellee's natural resources class. The classroom part of the class started at 8:15 a.m. and lasted for approximately one hour and twenty minutes. Wilfong depo. at 11. At approximately 9:15 a.m., the students were divided into several groups for various lab activities. Id. at 9, 11. Janelle was assigned to the log splitter group which was approximately sixty yards away from where appellee was standing. Id. at 6. Appellee was gathering tools for the landscaping lab and "making sure they had a good start and the tractors were running." Id. at 9. Appellee was heading out the door to the log splitter site when Janelle's injury occurred at approximately 9:55 a.m. Id. at 10. It was common practice for appellee to rotate between the various lab activities as the class progressed. Id.

{¶ 35} Sometime prior to the day of the incident, appellee specifically instructed the class on the safe operation of the log splitter:

{¶ 36} "A. The overall class was just given a - - an explanation on how to safely operate, as far as keeping your hands away from the ram and the wedge and keeping your - - with - - not running the control until the person's hands are clear. If there was two different people running it, one person splitting wood needs to get their hands clear and the other person needs to make sure they are clear before they actually push the lever." Id. at 12-13.

{¶ 37} These instructions were not given each time the log splitter was used, but was given at the beginning of the school year in September. Id. at 24. The instructions take approximately fifteen to twenty minutes. Id. at 17. Janelle's injury occurred on October 2nd. Id. at 24.

{¶ 38} On the day of the injury, it was Janelle's first use of the log splitter, and appellee had yet to observe her using the machine. Id. at 19. There is no documentation substantiating that Janelle was present in class on the day appellee gave the initial instructions on the log splitter. Id. at 15-16, 19, 23. However, Janelle took a general safety test indicating that she was aware that, "[n]o student should use equipment, including power tools or hand tools, until he has had instructions relative to the safe handling of it by proper authority." Martin depo. at 38-41. Janelle could not remember if the test was from the year before, during her sophomore year, or was appellee's test. Id. at 39-40.

{¶ 39} The facts as presented fail to rise to the level of perverse disregard of a known risk. Our brethren from the Eighth District examined a similar fact pattern in *Bolling v. North Olmstead City Schools Board of Education,* Cuyahoga App. No. 90669, 2008-Ohio-5347. As in this case, the injuries to the plaintiff in *Bolling* occurred while at school in connection with a governmental function. The injuries were claimed to be caused by the failure to instruct or supervise the plaintiff in the use of a dangerous piece of equipment. The *Bolling* court gave a clear and concise review of the law relative to willful, wanton, and reckless conduct at ¶39-43:

{¶ 40} "We are guided by the Ohio Supreme Court's recent decision in *O'Toole v. Denihan,* 118 Ohio St.3d 374, which addressed what constitutes reckless conduct for purposes of statutory political subdivision immunity:

{¶ 41} " '[A]n actor's conduct "is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to

realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."***Distilled to its essense, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk.' *Id.* at ¶73.

{¶ 42} " 'Recklessness, therefore, necessarily requires something more than mere negligence.***In fact, "the actor must be conscious that his conduct will in all probability result in injury." ' *Id.* at ¶74; see, also, *Rankin v. Cuyahoga County Dep't of Children & Family Servs.,* 118 Ohio St.3d 392, 2008-Ohio-2567, ¶37.   Unless the individual's conduct does not demonstrate a disposition to perversity as a matter of law, the determination of recklessness is within the province of the jury.  *O'Toole,* 2008-Ohio-2574, ¶75.

{¶ 43} " ' "Wanton conduct" involves failure to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result.'  *Gladon v. Greater Cleveland Regional Transit Authority* (1996), 75 Ohio St.3d 312, 1996-Ohio-137.  The term 'implies intent relating to misconduct rather than relating to result, so that intent to injure need not be shown.'  *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445.

{¶ 44} " 'In contrast, "willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result.  *Id.*  Consequently, "willful misconduct" is defined as: "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some

wrongful acts with knowledge or appreciation of the likelihood of resulting injury." '
*Fogle v. Vill. of Bentleyville,* Cuyahoga App. No. 88375, 2008-Ohio-3660, ¶47, quoting
*Whitfield v. City of Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, quoting *Brockman,*
supra."

{¶ 45} The facts argued by appellants to establish perverse disregard are not that
instructions were not given, but that Janelle did not recall the safety instructions or
taking the safety test.  Appellee argues his lack of physical presence at the log splitter
because of his supervision of other students did not rise to the level of disregard of a
known risk.  In this case, it is uncontested that safety instructions on the log splitter were
given, and Janelle took a safety test.  Appellee was on his way out to personally
observe Janelle's group on the log splitter.  These facts taken as a whole do not create
sufficient issues of material fact to present a jury question on willful, wanton, or reckless
conduct.

{¶ 46} Upon review, we find the trial court did not err in granting summary
judgment to appellee.

{¶ 47} The sole assignment of error is denied.

{¶ 48} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Edwards, J. concur.

_s/ Sheila G. Farmer_____

_s/ William B. Hoffman_____

_s/ Julie A. Edwards_____

JUDGES

SGF/sg

[Cite as *Martin v. Bd. of Edn. for Mid-E. Career & Technology Ctrs.*, 2011-Ohio-5753.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TRUDY MARTIN ET AL., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | |
| v. | : | JUDGMENT ENTRY |
| | : | |
| BOARD OF EDUCATION FOR | : | |
| THE MID-EAST CAREER AND | : | |
| TECHNOLOGY CENTERS ET AL., | : | |
| | : | |
| Defendants-Appellees. | : | CASE NO. CT11-0015 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed. Costs to appellants.

_s/ Sheila G. Farmer_____

_s/ William B. Hoffman_____

_s/ Julie A. Edwards_____

JUDGES